UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANDRA KRAUSE, Individually
and as Personal Representative of the
Estate of Matthew Thomas Krause, Deceased,

        Plaintiff,

v.

OFFICER BRIAN D. JONES,
LIEUTENANT ERIC GILLMAN,
SGT. DWAYNE GREGG, REDFORD POLICE
DEPARTMENT, and REDFORD TOWNSHIP,

        Defendants.

Case No. 12-10265

Hon. Bernard A. Friedman
Mag. Judge Laurie J. Michelson

_____/

### REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR ATTORNEY FEES [22]

Following a day-long stand-off with police, Plaintiff Sandra Krause's 33-year old son (Matthew Krause) was shot at least 18 times and killed when Defendant police officers attempted to extricate him from his bedroom. Plaintiff brought this lawsuit individually and as her son's personal representative against a number of Redford Police Officers involved in the standoff and shooting, the Redford Police Department, and Redford Township, alleging, among other things, excessive use of force in violation of the Fourth Amendment. The parties conducted discovery for more than a year. On August 15, 2013, District Judge Bernard A. Friedman granted Defendants' Motion for Summary Judgment. (Dkt. 19.) A subsequent motion for reconsideration was denied and Plaintiff has filed a timely appeal. Presently before the Court for a report and recommendation is Defendants' post-judgment motion for attorney fees pursuant to 42 U.S.C. § 1988 as the prevailing

parties.[1] The Court has carefully reviewed the relevant pleadings and briefing and finds that oral argument will not aid in the resolution of the motion. *See* E.D. Mich. LR 7.1. Based upon the manner in which the case was conducted, Plaintiff's arguments, and Judge Friedman's opinion, the Court does not find that this case was "frivolous, unreasonable, or without foundation" from the outset. Thus, the Court RECOMMENDS that Defendants' motion for the imposition of fees be DENIED.

## I.   BACKGROUND

### A.   Factual Summary

Judge Friedman's summary judgment opinion contains an extensive discussion of the factual background. This report, therefore, will provide only a brief summary.

Matthew Krause ("Krause" or "decedent") failed to appear for an arraignment in the 17th District Court in Redford Township on drug charges (felony possession of cocaine over 50g). When members of the U.S. Marshals' Fugitive Apprehension Team came to arrest Krause at his home, Krause retreated to his bedroom with a firearm. Krause pointed the gun at one of the Marshals and made threats against them. Thus, the Marshals contacted the Redford Township Police Department for assistance which led to the Redford SWAT team taking over the scene. Officers negotiated with Krause for several hours. Krause made statements to the effect that he would not come out alive. He also spoke with his father and allegedly began to apologize and say goodbye.

After an extended period of time without communication, surveillance equipment revealed that Krause appeared to be asleep in his bedroom closet. A decision was made for the SWAT team

---

[1] While the motion was referred for hearing and determination pursuant to 28 U.S.C. § 631(b)(1)(A), magistrate judges proceed by report and recommendation when determining post-judgment motions for attorney fees. *See Massey v. City of Ferndale*, 7 F.3d 506, 509-10 (6th Cir. 1993); *Williams v. City of Southfield*, 99 F. App'x 44 (6th Cir. 2004).

to extract him. They deployed a "flash bang" distraction device and Defendant Officer Brian Jones and other officers began to enter the bedroom with their firearms set to the automatic position. According to Defendants and the Redford Township Investigator's Report, a shot was fired from the closet where Krause had been holed up with his gun.[2] Jones returned fire. Krause was shot 18 or 19 times and was later pronounced dead at Garden City Hospital.

### B.     Procedural History

Krause's mother, Sandra Krause, brought this lawsuit on January 4, 2012, in the Wayne County Circuit Court alleging violations of her son's constitutional rights and gross negligence against Redford Township, the Redford Police Department, Officer Jones (who fired the shots), Lieutenant Gilman (who entered the bedroom with Jones) and Sergeant Gregg (one of the negotiators). (Dkt. 1, Not. of Removal, Att.) More specifically, Plaintiff alleged the Officers used excessive force against her son or failed to intervene in the alleged use of excessive force in violation of the Fourth and Fourteenth Amendments. (*Id*.) Defendants removed the case to federal court on January 20, 2012, (*id*) and filed an Answer on January 25, 2012 (Dkt. 3). The parties submitted their Rule 26(f) Joint Proposed Discovery Plan on March 27, 2012. (Dkt. 7.) The parties requested a discovery cut-off date of January 22, 2013. (*Id*.). They also "agree[d] to participate in an alternative dispute resolution including, but not limited to, Case Evaluation." (*Id*.) On November 27, 2012, the parties stipulated to extend discovery to April 22, 2013. (Dkt. 13.)

Defendants filed their summary judgment motion by the June 22, 2013 deadline. (Dkt. 14.) As to the excessive use of force claim, Defendants argued that they were protected by qualified

---

[2] The gun had one empty casing in the cylinder, a round from the gun was found lodged in the wall next to the bedroom doorway where the Officers had entered, and a bullet hole was found in the open door and in the closet door.

immunity and that Plaintiff failed to identify any policy or custom of the Township that caused the alleged constitutional violation. (*Id*.) Plaintiff filed a response contending that material issues of fact precluded summary judgment. (Dkt. 17.) It was Plaintiff's contention that the record was unclear as to whether Matthew Krause shot at the officers and "that the officers acted unreasonably because, immediately before entering the bedroom, they set their weapons to fire automatically when they already knew that the decedent was asleep." (Dkt. 19, Op. and Order at 6.) Judge Friedman disagreed and granted Defendants' motion. (Dkt. 19.) Judge Friedman found it undisputed that decedent "was armed and he exhibited a willingness to use deadly force" and "shot at Officer Jones when he entered the bedroom, leaving him no choice but to respond with the deadly force necessary to eliminate such a mortal threat." (*Id*. at 7.) Plaintiff filed a Motion for Reconsideration arguing primarily that the Court neglected to construe the record facts in her favor. (Dkt. 21.) The motion was denied. (Dkt. 24.) Judge Friedman found that Plaintiff's arguments "center around the Court's failure to consider several 'theories' of what might have occurred on that fatal December night in 2008," but that theories "do not otherwise satisfy the rigorous evidentiary standards courts must employ when evaluating motions for summary judgment." (*Id*. at 1-2.) Plaintiff has appealed to the United States Court of Appeals for the Sixth Circuit. (Dkt. 26.)

  Remaining in this Court is Defendants' Motion for Attorney Fees pursuant to 42 U.S.C. § 1988. (Dkt. 22.) The motion is focused on the excessive force claim. (*Id*.) Defendants contend that "[b]ecause the Sixth Circuit has repeatedly upheld the use of deadly force by a police officer when he perceived a serious threat of physical harm to himself or others, a cursory review of the law would have revealed that the use of force under the circumstances presented here could not be a constitutional violation." (*Id*. at ¶ 7.) Plaintiff filed a one-paragraph response: "Defendants are not

4

entitled to attorney fees as this action was not filed frivolously and/or is not a frivolous Complaint. Furthermore, Plaintiff currently has an Appeal pending and therefore, requests this matter be preserved until after same." (Dkt. 30.)

## II. ANALYSIS

### A. Legal Standard

The Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988(b), states, in pertinent part: "In any action or proceeding to enforce a provision of section[] . . . 1983. . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. . . ." While courts have concluded that prevailing plaintiffs should ordinarily recover attorneys' fees, *Smith v. Heath*, 691 F.2d 220, 228 (6th Cir. 1982), a prevailing defendant is not routinely or automatically entitled to such an award for fear of chilling legitimate civil rights claims. Accordingly, the Sixth Circuit has made clear that "[a]n award of attorney fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct . . . . A prevailing defendant should only recover upon a finding by the district court that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Riddle v. Egensperger*, 266 F.3d 542, 547 (6th Cir. 2001) (citations and internal quotation marks omitted); *see also Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986). The Supreme Court has further explained that in applying these criteria,

> it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the

> course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S. Ct. 694, 54 L. Ed. 2d 648 (1978).[3]

Nevertheless, attorney's fees are appropriate if "the plaintiff's ultimate failure is clearly apparent from the beginning or at some significant point in the proceedings after which the plaintiff continues to litigate." *Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 183 (6th Cir. 1985).

### B. This Is Not A Truly "Egregious" Case

As an initial matter, Judge Friedman made no finding that Plaintiff's claims were frivolous or groundless, nor did Defendants invite the Court to do so through a motion to dismiss filed at the outset of the litigation. To the contrary, after removing the case, Defendants immediately answered. They either requested or acceded to a lengthy discovery period. They were also agreeable to exploring settlement through alternative dispute resolution. Months into the case, on November 27, 2012, they agreed to more time for discovery. Nothing was provided to the Court to indicate Defendants believed Plaintiff's case had absolutely no merit from the outset or after months of discovery. In *Riddle v. Egensperger,* the Sixth Circuit reversed an award of attorney fees to the prevailing defendants. 266 F.3d 542 (6th Cir. 2001). The Court of Appeals explained, in part:

> The District Court and the Magistrate Judge's findings regarding the award of attorney fees were based on the findings on Defendants' summary judgment motion, after discovery had taken place and the parties had filed their respective briefs. Neither the District Court nor

---

[3] Although *Christiansburg* dealt with attorney fee awards in Title VII cases, the Supreme Court has held that the standards enunciated by the Court in that case apply equally in § 1983 cases. *See Hughes v. Rowe*, 449 U.S. 5, 14, 101 S. Ct. 173, 178, 66 L. Ed. 2d 163 (1980).

> the Magistrate Judge made a finding that the claims were "groundless at the outset" nor a finding that Riddle and Irvine continued to litigate after it "clearly" became so."
>
> \* \* \*
>
> Even though the claims after discovery are found to be without merit by a court, such a finding does not equate with a determination that the claims were without foundation when the complaint was initially filed. . . . If the underlying claims and Appellants' actions were frivolous, Defendants could have used Rule 12(b)(6) to narrow the claims at the onset, rather than engaging in extensive discovery in order to obtain summary judgment. Rule 56 is a tool to narrow the factual and legal issues to be brought to trial but does not necessarily mean that a finding not in favor of a plaintiff means that the plaintiff has no basis for filing a complaint. . . . A potential plaintiff's fear of an increased risk of being assessed attorney fees after extensive discovery has taken place and who continues to proceed to a ruling on a summary judgment motion, would create a disincentive to the enforcement of civil rights laws and would have a chilling effect on a plaintiff who seeks to enforce his/her civil rights, especially against a governmental official.

*Riddle*, 266 F.3d at 550-51 (citations omitted); *see also Tahfs v. Proctor*, 316 F.3d 584, 595-96 (6th Cir. 2003) (providing that § 1988 fees should be awarded to defendants only in truly "egregious" cases).

As mentioned, Defendants did not move at the outset for dismissal of any of Plaintiff's claims as a matter of law. *See Alkhateeb v. Charter Twp. of Waterford*, No. 02-73742, 2008 WL 892660, at \*3 (E.D. Mich. Mar. 31, 2008) (citing defendants' failure to move for dismissal at the outset of the case as a factor in denying an award of attorney fees). Instead, as in *Riddle*, the parties engaged in extensive discovery and Defendants moved for summary judgment only after discovery was completed. The Complaint, however, alleges most of the facts that Defendants now contend make this case meritless. Plaintiff alleged that Krause ran into the bedroom creating a barricaded gunman situation, he pointed a gun at the Marshals, he expressed repeatedly that he was not coming

7

out of the situation alive, he apologized and said good-bye to his father, law enforcement officers rushed the bedroom after Krause fell asleep, and the stand-off lasted several hours. (Compl., ¶¶ 12, 15-17, 20, 23, 24-16.) And while the Complaint does not allege that Krause fired on the officers, Defendants rely on the findings in a public record police report, which was in existence before Defendants answered the Complaint, to support that conclusion. *See, e.g., Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." (citation omitted)).

Plaintiff made an attempt to prove her claims. She fell short. While her claims failed to survive summary judgment, this Court cannot say her position was wholly unjustified. Claims of excessive force by police officers are analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). When analyzing such a claim the Court must consider: (1) the severity of the crime; (2) whether the suspect poses an immediate threat to the safety of officers or others; and (3) whether the suspect is actively resisting arrest or attempting to flee. *Id.* The trial court must determine "whether the officers' alleged actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id* at 397. Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id* at 396. Apprehension of a suspect by the use of deadly force is reasonable "only if 'the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others.'" *Chappell v. City of Cleveland*, 585 F.3d

901, 906 (6th Cir. 2009) (citing *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)).

The parties disagree on whether Defendants' actions were reasonable. Plaintiff argued that any danger her son may have once posed abated when he fell asleep, such that it was unreasonable for the officers to set their firearms to the automatic position. Defendants are correct that substantial Sixth Circuit law supports a qualified immunity defense for police officers that respond to gunfire with deadly force. But the right to be free from deadly force when not posing a reasonable threat to others is also clearly established in this Circuit. *See Bletz v. Gribble*, 641 F.3d 743, 752 (6th Cir. 2011) (citing *Ciminillo v. Streicher*, 434 F.3d 461, 468 (6th Cir. 2006) (stating that the court has clearly established that a person has a "right not to be shot unless they are perceived as posing a threat to officers or others")). Plaintiff argued throughout, and will likely continue to argue on appeal, that the record is disputed as to whether Matthew Krause fired on the officers. According to Plaintiff, her medical examiner expert – apparently in contrast to Defendants' interpretation of the autopsy report – was prepared to testify that Krause had no gunshot residue on his hand and that, based on the position of the weapon when it was found, it would have been impossible for Krause to discharge his weapon. Plaintiff believes it is also plausible that the one gunshot allegedly fired from decedent's gun was a reflex response to the flash-bang. Had Plaintiff succeeded in creating a fact issue as to whether her son fired the gun or fired it at the officers when they entered the room (as opposed to some earlier time), her additional argument that firing approximately 20 shots at her son was overkill would not be frivolous. *See Jones v. Sandusky County*, No. 12-3402, 2013 U.S. App. LEXIS 23137 (6th Cir. Nov. 12, 2013) (affirming district court's denial of summary judgment on issue of qualified immunity where defendant officers shot and killed an armed decedent after a stand-off at his home where the record indicated the flash-bang device distracted or impaired both

9

decedent and the officers, gunfire occurred immediately after the detonation of the flash-bang device, the police had not made prior contact with decedent, and he was asleep prior to the detonation of the flash-bang device).

In sum, nothing in the record indicates that Plaintiff held anything but an honest belief that she and her son had suffered a violation of their civil rights when she filed her Complaint. That the Court ultimately disagreed with her or that his opinion "points out both the factual and legal inadequacies underlying [her] Complaint" (Mot. for Fees at 2), does not establish that this is the type of egregious case that merits the extreme sanction of having to pay Defendants' attorneys fees.

### III.  CONCLUSION AND RECOMMENDATION

Accordingly, this Court **RECOMMENDS** that Defendants' Motion for Attorney Fees (Dkt. 22) be **DENIED**. Additionally, the hearing previously scheduled for January 15, 2014 is hereby **CANCELLED**.

### IV.  FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation by the district judge within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate

exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

                                      S/Laurie J. Michelson
                                      Laurie J. Michelson
                                      United States Magistrate Judge

Dated: January 7, 2014

---

## PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon the parties and/or counsel of record via the Court's ECF System and/or U. S. Mail on January 7, 2014.

                                      s/Jane Johnson
                                      Case Manager to
                                      Magistrate Judge Laurie J. Michelson